IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

SCOTTSDALE INSURANCE COMPANY,  )
                                )
            Plaintiff,  )
                                )
v.                              )
                                )
LESTER RAY BELMAR, JR.,         )
                                )
    **Serve: Lester Ray Belmar, Jr.**  )
        **928 Southwest Upland Port**  )
        **Oak Harbor, WA 98277**  )
                                )
and                             )
                                )
VALIANT PROTECTIVE SERVICES, LLC,  )   C.A. No. 2:13cv___36___
                                )
    **Serve: Lester Ray Belmar, Jr.,**  )
        **Member, Manager &**  )
        **Registered Agent**  )
        **928 Southwest Upland Port**  )
        **Oak Harbor, WA 98277**  )
                                )
and                             )
                                )
TRAVIS BAKER,                   )
                                )
    **Serve: Travis Baker,**  )
        **1111 Buford Court**  )
        **Chesapeake, VA 23320**  )
                                )
and                             )
                                )
CAROL RENEE SPENCER, co-administrator of  )
  the Estate of Darrell Eugene Spencer,  )
                                )
    **Serve: Carol Renee Spencer,**  )
        **3212 Bapaume Avenue**  )
        **Norfolk, VA 23509**  )
                                )
and                             )
                                )

FILED

JAN 2 3 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MICHAEL JAMAR SPENCER, co-administrator )
   of the Estate of Darrell Eugene Spencer, )
                                   )
     **Serve: Michael Jamar Spencer,** )
         **3413 Verdun Avenue** )
         **Norfolk, VA 23509** )
                                     )
            Defendants. )
_____ )

## COMPLAINT FOR DECLARATORY JUDGMENT

The plaintiff, Scottsdale Insurance Company ("Scottsdale"), by counsel, states the following in support of its Complaint for Declaratory Judgment:

1.     This action seeks declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and Title 28, Section 2201 of the United States Code, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Scottsdale and the defendants, Lester Ray Belmar, Jr. ("Mr. Belmar"), Valiant Protective Services, LLC ("VPS," and collectively with Mr. Belmar, "Valiant"), Travis Baker ("Mr. Baker"), Carol Renee Spencer, co-administrator of the Estate of Darrell Eugene Spencer ("Ms. Spencer"), and Michael Jamar Spencer, co-administrator of the Estate of Darrell Eugene Spencer ("Mr. Spencer," collectively with Ms. Spencer, the "Administrators", collectively with Valiant, Mr. Baker, and Ms. Spencer, the "Defendants", and collectively with Valiant, Mr. Baker, Ms. Spencer, and Scottsdale, the "Parties").

## JURISDICTION

2.     The Court has original jurisdiction in this action under Title 28, Section 1332, of the United States Code, as it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## PARTIES

4.     Scottsdale is an insurance company organized and existing under the laws of the State of Ohio, with its principal place of business in Scottsdale, Arizona.  Scottsdale, therefore, is a citizen of the State of Ohio and of the State of Arizona.  It is not a citizen of the Commonwealth of Virginia or the State of Washington.

5.     Mr. Belmar is a natural person domiciled in Oak Harbor, Washington.  He is a Washington citizen, and is not a citizen of the State of Ohio or the State of Arizona.

6.     VPS is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, which formerly had its principal office in Virginia Beach, Virginia. Upon information and belief, VPS' sole member and manager was Mr. Belmar.  VPS no longer operates, but for purposes of this lawsuit it is a citizen of the Commonwealth of Virginia based on its organization under Virginia law, and of the State of Washington based on Mr. Belmar's Washington citizenship.  VPS is not a citizen of the State of Ohio or the State of Arizona.

7.     Mr. Baker is a natural person domiciled in Chesapeake, Virginia.  He is a Virginia citizen, and is not a citizen of the State of Ohio or the State of Arizona.

8.     Ms. Spencer is a natural person domiciled in Norfolk, Virginia.  She is a Virginia citizen, and is not a citizen of the State of Ohio or the State of Arizona.

9.     Mr. Spencer is a natural person domiciled in Norfolk, Virginia.  He is a Virginia citizen, and is not a citizen of the State of Ohio or the State of Arizona.

## VENUE

10.     The venue of this action is properly predicated upon Section 1391(A) of Title 28 of the United States Code, in that jurisdiction is founded on diversity of citizenship and this

action is brought within the judicial district and division in which at least one of the Defendants resides, where at least one of the Defendants does business, and/or in which a substantial part of the events or omissions giving rise to the claim(s) alleged herein occurred.

## STATEMENT OF FACTS

11.     Scottsdale issued an insurance contract to Valiant, contract number CPS1337268, for the contract period January 28, 2011 to January 28, 2012 (the "Insurance Contract").

12.     A true copy of the Insurance Contract is appended hereto as Exhibit "1."

13.     The Insurance Contract provided, in part, commercial general liability insurance for Valiant's business, subject to the contract's terms, conditions, limitations and exclusions.

14.     Valiant's business was represented to Scottsdale as "security guard services," and is stated as such in the Insurance Contract's Declarations. (See Exh. 1.)

15.     On May 21, 2011, Valiant was providing security guard services for a night club in Virginia Beach, Virginia, called Hangar '09 (the "Club").

16.     Mr. Belmar was among the Valiant personnel providing security services at the Club on that date.

17.     Mr. Belmar was armed with a pistol while he was on duty at the Club.

18.     On the date in question, a fight erupted among patrons at the Club, and spilled onto the parking lot of an adjacent business.

19.     Mr. Belmar was present at the scene of the fight.

20.     Among the combatants was Darrell Spencer ("Darrell").

21.     Mr. Baker was also present at the scene of the fight.

22.     At some point during the fight, Mr. Belmar drew his pistol and fired at Darrell, killing him (the "Shooting").

-4-

23.     During the Shooting, Mr. Belmar also shot Mr. Baker, wounding him.

24.     Mr. Belmar was subsequently convicted of second-degree murder in the Circuit Court for the City of Virginia Beach in connection with the Shooting and Darrell's death (the "Murder Conviction").

25.     Mr. Belmar was also convicted of malicious wounding in the Circuit Court for the City of Virginia Beach in connection with the Shooting and Mr. Baker's injuries (the "Wounding Conviction," and collectively with the Murder Conviction, the "Convictions").

26.     The Administrators have filed a wrongful-death lawsuit against Valiant in the Circuit Court for the City of Virginia Beach, case number 12-5633, styled Carol Renee Spencer and Michael Jamar Spencer, Co-Administrators of the Estate of Darrell Eugene Spencer v. Lester Ray Belmar, Jr. and Valiant Protective Services, LLC (the "Spencer Action"), seeking an award of damages against Valiant in the amount of $1 million, plus pre-judgment interest from May 21, 2011, and litigation costs, based on Darrell's death at Mr. Belmar's hands.

27.     A true copy of the Complaint filed in the Spencer Action is appended hereto as Exhibit "2."

28.     Mr. Baker has filed a personal-injury lawsuit against Valiant in the Circuit Court for the City of Virginia Beach, case number 12-6447, styled Travis Baker v. Lester Ray Belmar, Jr. and Valiant Protective Services, LLC (the "Baker Action," and collectively with the Spencer Action, the "Underlying Actions"), seeking an award of damages against Valiant in the amount of $1.35 million, plus pre-judgment interest from May 21, 2011, and litigation costs, based on Mr. Baker's injuries at Mr. Belmar's hands.

29.     A true copy of the Complaint filed in the Baker Action is appended hereto as Exhibit "3."

30.     Valiant has never provided Scottsdale with notice of the Shooting, the Convictions or the Underlying Actions.

31.     Scottsdale was unaware of the Shooting, the Convictions or the Underlying Actions until October 5, 2012, when the Administrators' attorney faxed a copy of a newspaper article published in The Virginian-Pilot to Scottsdale, reporting that Mr. Belmar had been involved in the Shooting and that he had been convicted of murder and malicious wounding on October 4, 2012, in connection with the Shooting.

32.     By letter dated October 18, 2012, the Administrators' attorney sent Scottsdale a courtesy copy of the Complaint filed in the Spencer Action.

33.     By letter dated November 26, 2012, Mr. Baker's attorney wrote to Scottsdale informing it of the Baker Action, and providing Scottsdale with a courtesy copy of the Complaint filed in the Baker Action.

34.     Scottsdale has begun defending Valiant in the Underlying Actions subject to a full and complete reservation of all of Scottsdale's rights under the Insurance Contract and applicable law.

35.     Scottsdale disputes that it has any duty to defend Valiant in the Underlying Actions, and that it has any duty to indemnify Valiant for any judgments entered against it in the Underlying Actions, for the reasons alleged further herein.

36.     For all of these reasons, and as further alleged herein, declaratory judgment should be entered in Scottsdale's favor, holding that it has no obligation to pay insurance benefits to any of the Defendants in connection with the Underlying Actions, and no obligation to continue defending Valiant in the Underlying Actions.

## FIRST REQUEST FOR DECLARATORY JUDGMENT – VALIANT BREACHED THE INSURANCE CONTRACT BY FAILING TO PROVIDE SCOTTSDALE WITH PROMPT NOTICE OF THE SHOOTING AND/OR THE UNDERLYING ACTIONS

37.     Scottsdale hereby restates the allegations set forth in Paragraphs 1-36 of this Complaint, as if those paragraphs were re-alleged verbatim here.

38.     The Insurance Contract's Commercial General Liability coverage part provides, in part, that Valiant "must see to it that [Scottsdale is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim.  To the extent possible, notice should include . . . [h]ow, when and where the 'occurrence' or offense took place . . . [t]he names and addresses of any injured persons and witnesses . . . and . . . [t]he nature and location of any injury or damage arising out of the 'occurrence' or offense."  (Exh. 1, Comm'l Gen'l Liab. Cov. form, sec. IV.2.a.)

39.     The Insurance Contract defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Id., sec. V.13.)

40.     The Insurance Contract further provides, in part, that "[i]f a claim is made or 'suit' is brought against any insured, [Valiant] must . . . [i]mmediately record the specifics of the claim or 'suit' and the date received . . . and . . . [n]otify [Scottsdale] as soon as practicable.  [Valiant] must see to it that [Scottsdale] receive[s] written notice of the claim or 'suit' as soon as practicable."  (Id., sec. IV.2.b.)

41.     The Insurance Contract defines "suit" to mean "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged."  (Id., sec. V.18.)

42.     "Bodily injury" is defined in the Insurance Contract as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Id., sec. V.3.)

43.     The Insurance Contract provides still further, in part, that Valiant "and any other involved insured must . . . [i]mmediately send [Scottsdale] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'. . . ." (Id., sec. IV.2.c(1).)

44.     The Insurance Contract's Errors and Omissions coverage part provides, in part, that Valiant "must see to it that [Scottsdale is] notified as soon as practicable of an 'error or omission' which may result in a 'claim.' To the extent possible, notice should include . . . [h]ow and when the 'error or omission' took place . . . [t]he names and addresses of any injured persons and witnesses . . . and . . . [t]he nature and location of any injury or damage arising out of the 'error or omission.'" (Exh. 1, E&O Cov. form, sec. IV.2.a.)

45.     The Insurance Contract defines "error or omission" as "any negligent act, error or omission while performing those services described in the Schedule of this Coverage Part under the Description of Services." (Id., sec. VI.4.)

46.     The Insurance Contract's Errors and Omissions coverage part's Schedule provides, "Description of Services:  Security Guard Services." (Id., Sched.)

47.     The Insurance Contract's Errors and Omissions coverage part defines "claim" as "an oral or written notice from any party that it is their intention to hold you responsible for any 'error or omission.'" (Id., sec. VI.2.)

48.     The Insurance Contract's Errors and Omissions coverage part further provides that "[i]f a 'claim' is made or 'suit' is brought against any insured, [Valiant] must . . . [i]mmediately

record the specifics of the 'claim' or 'suit' and the date received . . . and . . . [n]otify [Scottsdale] as soon as practicable. Valiant must see to it that [Scottsdale] receive[s] notice of the 'claim' or 'suit' as soon as practicable." (Id., sec. IV.2.b.)

49.     The Insurance Contract's Errors and Omissions coverage part provides as well that Valiant "and any other involved insured must . . . [i]mmediately send [Scottsdale] copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'. . . ." (Id., sec. IV.2.c(1).)

50.     Each of the foregoing contractual requirements is a condition precedent to insurance coverage under the Insurance Contract's Commercial General Liability coverage part and/or its Errors and Omissions coverage part.

51.     Valiant has not met any of these conditions.

52.     Indeed, in the seventeen months that passed between the Shooting and Mr. Belmar's Convictions, Valiant never provided Scottsdale with notice of an "occurrence," an "error or omission," or any potential or actual claims or demands against Valiant.

53.     Valiant has not even notified Scottsdale of the Underlying Actions, leaving that to the Administrators and Mr. Baker.

54.     The Underlying Actions qualify as "suits" as defined in the Insurance Contract's Commercial General Liability coverage part.

55.     The Underlying Actions qualify as "claims" and/or "suits" as defined in the Insurance Contract's Errors and Omissions coverage part.

56.     Furthermore, the Insurance Contract 's Commercial General Liability coverage part provides also that "[b]odily injury . . . will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured

or any 'employee' authorized by [Valiant] to give or receive notice of an 'occurrence' or claim . . .

[b]ecomes aware by any . . . means that 'bodily injury' . . . has occurred or has begun to occur."

(Exh. 1, Comm'l Gen'l Liab. Cov. form, sec. I.A.1.d(3).)

57.     Likewise, the Insurance Contract's Errors and Omissions coverage part provides

that "'[d]amages' will be deemed to have been known to have occurred at the earliest time when

any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any

employee authorized by you to give or receive notice of an occurrence or claim . . . [b]ecomes

aware by any . . . means that 'damages' have occurred or have begun to occur." (Exh. 1, E&O

Cov. form, sec. I.1.d(3).)

58.     That coverage part further provides that "'[d]amages' because of 'errors or

omissions' include 'damages' claimed by any person or organization for care, loss of services or

death resulting at any time from the 'error or omission.'" (Id., sec. I.1.e.)

59.     Mr. Belmar was a named insured under the Insurance Contract.

60.     Additionally, Mr. Belmar was VPS' principal, and, therefore, he was authorized

by VPS to give or receive notice of an "occurrence," an "error or omission," "damages," and/or a

claim.

61.     Mr. Belmar knew of the Shooting as soon as he shot Darrell and Mr. Baker.

62.     Mr. Belmar knew of Darrell's death and of Mr. Baker's injuries at or very soon

after the Shooting's occurrence.

63.     Thus, to the extent that the Shooting might qualify as an "occurrence" causing

"bodily injury" and/or as an "error or omission" causing "damages" as defined in the Insurance

Contract (which Scottsdale expressly denies, as alleged further herein), Valiant had a duty to

report the Shooting to Scottsdale immediately after it occurred.

64.     Valiant failed in that duty by never reporting the Shooting to Scottsdale.

65.     Valiant's failure to notify Scottsdale of the Shooting and/or of the Underlying Actions was unreasonable.

66.     Valiant has thus breached the duties of prompt notice that it bears under the Insurance Contract.

67.     Declaratory judgment should therefore be entered in Scottsdale's favor for at least this reason.

## SECOND REQUEST FOR DECLARATORY JUDGMENT – THE UNDERLYING ACTIONS DO NOT ALLEGE AN "OCCURRENCE" IMPLICATING THE "BODILY INJURY" LIABILITY INSURANCE GRANTED UNDER THE INSURANCE CONTRACT

68.     Scottsdale hereby restates the allegations set forth in Paragraphs 1-67 of this Complaint, as if those paragraphs were re-alleged verbatim here.

69.     The Insurance Contract provides, in part, that Scottsdale "will pay those sums that [Valiant] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies.  [Scottsdale] will have the right and duty to defend [Valiant] against any 'suit' seeking those damages.  However, [Scottsdale] will have no duty to defend [Valiant] against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." (Exh. 1, Comm'l Gen'l Liab. Cov. form, sec. I.A.1.a.)

70.     The insurance granted under the Insurance Contract "applies to 'bodily injury' . . . only if . . . [t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'. . . ." (Id., sec. I.A.1.b(1).)

71.     The Shooting was not accidental in nature, and it therefore does not qualify as an "occurrence."

72. Indeed, Mr. Baker alleges that the "actions of . . . [Mr.] Belmar . . . were willful and wanton and in utter disregard for the health and safety of others." (Exh. 3, ¶ 7.)

73. As the Underlying Actions do not involve "bodily injury" caused by an "occurrence," they do not implicate the insurance provided under the Insurance Contract.

74. Thus, for this separate and independent reason, declaratory judgment should be entered in Scottsdale's favor.

### THIRD REQUEST FOR DECLARATORY JUDGMENT – EVEN ASSUMING *ARGUENDO* THAT THE UNDERLYING ACTIONS INVOLVED AN "OCCURRENCE," THE INSURANCE CONTRACT EXCLUDES LIABILITY INSURANCE FOR EXPECTED OR INTENDED INJURY

75. Scottsdale hereby restates the allegations set forth in Paragraphs 1-74 of this Complaint, as if those paragraphs were re-alleged verbatim here.

76. The Insurance Contract also provides, in part, that "[t]his insurance does not apply to . . . '[b]odily injury' . . . expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." (Exh. 1, Comm'l Gen'l Liab. Cov. form, sec. I.A.2.a.)

77. Mr. Belmar intended or expected to cause "bodily injury" to Darrell and to Mr. Baker, as he deliberately shot each of them.

78. Indeed, Mr. Belmar has been convicted, inter alia, of second-degree murder and of malicious wounding in connection with the Shooting.

79. Mr. Belmar did not use reasonable force to protect persons or property during the Shooting.

80. Therefore, even assuming arguendo that the Underlying Actions involved an "occurrence" as defined in the Insurance Contract – and they do not – the Insurance Contract's

Commercial General Liability coverage part nevertheless excludes liability insurance in connection with the Shooting and the Underlying Actions.

81.    For this further, additional reason, declaratory judgment should therefore be entered in Scottsdale's favor.

## FOURTH REQUEST FOR DECLARATORY JUDGMENT – THE UNDERLYING ACTIONS ALSO DO NOT IMPLICATE THE INSURANCE CONTRACT'S INSURANCE FOR ERRORS AND OMISSIONS

82.    Scottsdale hereby restates the allegations set forth in Paragraphs 1-81 of this Complaint, as if those paragraphs were re-alleged verbatim here.

83.    The Insurance Contract's Errors and Omissions coverage part provides that Scottsdale "will pay those sums that [Valiant] becomes legally obligated to pay as 'damages' as a result of an 'error or omission' to which this insurance applies. [Scottsdale] will have the right and duty to defend [Valiant] against any 'suit' seeking those 'damages'. However, [Scottsdale] will have no duty to defend the insured against any 'suit' seeking 'damages' for an 'error or omission' to which this insurance does not apply." (Exh. 1, E&O Cov. form, sec. I.1.a.)

84.    The Insurance Contract defines "error or omission" as "any negligent act, error or omission while performing those services described in the Schedule of this Coverage Part under the Description of Services." (Id., sec. VI.4.)

85.    Mr. Belmar intentionally shot Darrell and Mr. Baker.

86.    The Shooting was, therefore, not a negligent act, error, or omission.

87.    The Underlying Actions, therefore, do not involve an "error or omission" as defined in the Insurance Contract.

88.    The Insurance Contract's insurance for "damages" resulting from an "error or omission," thus, is not implicated by the Underlying Actions.

89.     For this separate, additional reason, declaratory judgment should therefore be entered in Scottsdale's favor.

### FIFTH REQUEST FOR DECLARATORY JUDGMENT – EVEN ASSUMING *ARGUENDO* THAT THE UNDERLYING ACTIONS INVOLVED AN "ERROR OR OMISSION," THE INSURANCE CONTRACT EXCLUDES ERRORS-AND-OMISSIONS INSURANCE FOR CRIMINAL OR MALICIOUS ACTS

90.     Scottsdale hereby restates the allegations set forth in Paragraphs 1-89 of this Complaint, as if those paragraphs were re-alleged verbatim here.

91.     The Insurance Contract's Errors and Omissions coverage part provides that "[t]his insurance does not apply to . . . [i]njury arising out of a . . . malicious or criminal act by any insured." (Id., sec. I.2.d.)

92.     The Shooting was a criminal act perpetrated by Mr. Belmar.

93.     The Shooting was also malicious.

94.     Therefore, even assuming arguendo that the Underlying Actions otherwise implicated the Insurance Contract's insurance for "damages" resulting from an "error or omission" – and they do not – the contract's Errors-and-Omissions coverage part expressly excludes insurance in connection with the Underlying Actions due to the Shooting's criminal and/or malicious nature.

95.     Therefore, for this separate and independent reason, declaratory judgment should be entered in Scottsdale's favor.

96.     There exists a justiciable controversy of such immediacy between Scottsdale and the Defendants that this Court should declare the Parties' respective rights to avoid the possible accrual of damages to Scottsdale.

WHEREFORE, Scottsdale respectfully prays that this Court enter an Order, adjudging, ordering, and decreeing that:

(1)    Scottsdale has no duty to defend Valiant in the Underlying Actions;

(2)    Scottsdale has no duty to indemnify Valiant in connection with any judgment(s) entered against Valiant in either of the Underlying Actions;

(3)    Scottsdale has no duty to pay any amount whatsoever to the Administrators in connection with the Shooting and/or the Spencer Action;

(4)    Scottsdale has no duty to pay any amount whatsoever to Mr. Baker in connection with the Shooting and/or the Baker Action;

(5)    Scottsdale has no duty to pay any amount whatsoever to anyone whomsoever in connection with the Shooting and/or the Underlying Actions; and

(6)    Scottsdale is awarded all such other and further relief as the Court may deem appropriate and just.

Respectfully submitted,

SCOTTSDALE INSURANCE COMPANY

By:     MIDKIFF, MUNCIE & ROSS, P.C.

Of Counsel

Robert Tayloe Ross  (VSB No. 29614)
Kevin T. Streit  (VSB No. 45024)
Midkiff, Muncie & Ross, P.C.
300 Arboretum Place, Suite 420
Richmond, Virginia 23236
(804) 560-9600
(804) 560-5997 (facsimile)
rross@midkifflaw.com
kstreit@midkifflaw.com
*Counsel for Scottsdale Insurance Company*